IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|   |   |
|---|---|
| THOMAS BUDLONG, CANDACE APPLE, | : : : : : : |
| Plaintiffs, | : CIVIL ACTION NO. : 1:05-CV-2910-RWS |
| v. | : : : |
| BART L. GRAHAM, in his individual and official capacity as Commissioner of the Georgia Department of Revenue, | : : : : : : |
| Defendant. | : |

## ORDER

This case comes before the Court on (i) Plaintiffs' Motion for a Preliminary Injunction and for Consolidation of the Preliminary Injunction and the Final Disposition [2], (ii) Defendant's Motion for Leave to File Response [5], and (iii) Defendant's Motion to Dismiss [7]. As a preliminary matter, Defendant's unopposed Motion for Leave to File Response [5] is **GRANTED** *nunc pro tunc*. With respect to the remaining two motions, the Court has

reviewed the record, and now enters the following Order.

## Background

The facts underlying this controversy are largely, if not entirely, undisputed. Plaintiff Thomas Budlong is a retired librarian, and the former President of the Georgia Library Association, who complains that he has been forced to pay sales tax on books and papers in the State of Georgia, including *Zen and the Art of Motorcycle Maintenance* and the *Bhagavad Gita*. Plaintiff Candace Apple operates a retail bookstore called the Phoenix & Dragon in Atlanta, Georgia, that specializes in the sale of metaphysical, religious, and spiritual books and periodicals. Sales at her store are generally subject to Georgia's sales tax.

Plaintiffs brought this action to challenge two provisions of the Georgia Sales and Use Tax Code which exempt certain religious books and papers from the otherwise mandatory tax. In particular, Plaintiffs take issue with subsections 15(A) and 16 of O.C.G.A. 48-8-3, which exempt from taxation:

> (15)(A) . . . any religious paper in this state when the paper is owned and operated by religious institutions or denominations and no part of the net profit from the operation of the institution or denomination inures to the benefit of any private person;

2

. . .

> (16) The sale or use of Holy Bibles, testaments, and similar books commonly recognized as being Holy Scripture regardless of by or to whom sold.

O.C.G.A. §§ 48-8-3(15)(A) & (16). Plaintiffs urge that the foregoing exemptions are impermissible under the Free Speech, Establishment, and Free Exercise Clauses of the First Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment, and various, correlative provisions of the Constitution of the State of Georgia. They name as a Defendant Bart L. Graham, the Commissioner of the Georgia Department of Revenue, and seek an injunction forbidding the further enforcement of the statutory exemptions, as well as a declaration that the exemptions are unconstitutional.[1]

Plaintiffs, along with their Verified Complaint, filed a Motion for Preliminary Injunction. Defendant responded by submitting a Motion to Dismiss, and, in a brief in opposition to the Motion for Preliminary Injunction,

---

[1] Plaintiffs originally sought, in addition to the foregoing, "nominal and actual damages for taxes charged illegally and/or sales lost to unclear and illegal taxation." (V. Compl. at 25.) They voluntarily dismissed this element of their prayer for relief, however, by Notice [11] dated January 11, 2006.

3

incorporated the arguments made in their Rule 12(b) motion. The Court addresses these filings in turn.

## Discussion

**I.     Plaintiff's Motion for Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy[.]" Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). To obtain such relief, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002). The Court begins by evaluating Plaintiffs' likelihood of success on the merits, and then considers whether they have demonstrated the remaining elements necessary to obtain preliminary injunctive relief. It concludes that Plaintiffs have made the requisite showing, and are therefore

4

entitled to the relief they seek.[2]

### A.   Substantial Likelihood of Success on the Merits

Plaintiffs' likelihood of success in this case is substantial.  First, the unique and preferential treatment the State provides to "religious" literature raises serious constitutional concerns under the Establishment Clause,[3] especially following the Supreme Court's decision in Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S. Ct. 890, 103 L. Ed. 2d 1 (1989) (plurality opinion) (holding sales tax exemption applicable to religious literature, but not non-religious texts, violative of the Establishment Clause).  Accord Finlator v. Powers, 902 F.2d 1158, 1163 (4th Cir. 1990) (striking down sales tax exemption for "Holy Bibles" under the Establishment Clause).

Even more plain, however, is the exemptions' incompatibility with the

---

[2]Although a hearing is typically required before a preliminary injunction will issue, "where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1313 (11th Cir. 1998).  The Court finds the latter to be the case here, and consequently resolves the motion on the parties' papers.

[3] The Establishment Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, see Everson v. Bd. of Educ., 330 U.S. 1, 15, 67 S. Ct. 504, 91 L. Ed. 711 (1947), provides that the government "shall make no law respecting an establishment of religion." U.S. CONST. amend. I.

5

First Amendment's proscription against laws "abridging the freedom of speech, or of the press[.]" U.S. CONST. amend. I.  The cited statutory provisions, by excepting from tax "religious paper[s]" and "Holy Bibles, testaments, and similar books[,]" treat certain publications more favorably than others based on their content.  O.C.G.A. §§ 48-8-3(15)(A) & (16).  It is a fundamental principle of Free Speech jurisprudence that "[r]egulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated . . . ."  Regan v. Time, Inc., 468 U.S. 641, 648-49, 104 S. Ct. 3262, 82 L. Ed. 2d 487 (1984).

Indeed, more than twenty years ago, the Supreme Court relied on this principle to strike down a state law exempting religious, professional, trade, and sports journals from taxation, but subjecting general interest magazines to a sales tax.  See Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S. Ct. 1722, 95 L. Ed. 2d 209 (1987).  It reasoned:

> In order to determine whether a [publication] is subject to sales tax, [the State's] 'enforcement authorities must necessarily examine the content of the message that is conveyed . . . .' [Cit.] Such official scrutiny of the content of publications as the basis for imposing a tax is entirely incompatible with the First Amendment's guarantee of freedom of the press.

6

Id. at 230; id. at 229 (describing law that made a publication's "tax status depend[ent] on its *content*" as "particularly repugnant to First Amendment principles") (emphasis in original).  It held that, "to justify such differential taxation, the State must show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end."  Id. at 231.  Because the State in Ragland failed to make such a showing, the Court held the exemption before it violated the First Amendment.  Id. at 234; see also Finlator, 902 F.2d at 1163 (striking down as unconstitutional sales tax exemption for "Holy Bibles," because, *inter alia*, exemption forced state to differentiate between sacred and non-sacred texts in contravention of the Free Speech guarantee); Ahlburn v. Clark, 728 A.2d 449 (R.I. 1999) (striking down, on free press grounds, tax exemption for sale of "any canonized scriptures . . . including but not limited to the Old Testament and the New Testament versions").

Here, Defendant has not demonstrated, and has not attempted to demonstrate, a compelling interest that the exemptions at issue are necessary and narrowly tailored to serve.  Indeed, his filings are virtually bereft of any

7

argument that the challenged exemptions are, in fact, constitutional.[4]  Rather, his principal arguments in opposition are (i) that this Court lacks jurisdiction to consider Plaintiffs' challenge as a consequence of the Tax Injunction Act, 28 U.S.C. § 1341, and (ii) that Plaintiffs lack standing to bring this case.  Neither has merit.

The argument respecting this Court's jurisdiction rests on a misunderstanding of the relief sought by Plaintiffs in this case.  The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The Supreme Court, in 2004, made clear that this proscription was not intended to "prevent 'federal-court interference with all aspects of state

---

[4]The Court acknowledges that Plaintiffs' arguments against the exemptions are predicated on several provisions of the United States and Georgia Constitutions.  In light of the foregoing analysis, however, and in view of Defendant's failure to mount any meaningful response to Plaintiffs' Free Speech and Establishment Clause objections, the Court finds it neither necessary nor appropriate to evaluate the ability of the exemptions to withstand other avenues of constitutional attack.  See Konikov v. Orange County, 410 F.3d 1317, 1319 (11th Cir. 2005) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.") (quoting Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S. Ct. 152, 154, 89 L. Ed. 101 (1944)).

tax administration,' " Hibbs v. Winn, 542 U.S. 88, 105, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004), but rather, impacted only those "cases in which state taxpayers seek federal-court orders enabling them *to avoid paying state taxes*." Id. at 107.  In doing so, it underscored what it deemed the statute's "state-revenue-protective moorings[,]" and cited with approval Finlator, supra, in which the Fourth Circuit, without considering the Act, entertained a challenge to a state statute exempting Bibles from sales tax.  Id. at 106 & 110.

Defendant, notwithstanding Hibbs, attempts to invoke the Tax Injunction Act by construing Plaintiffs' suit as one seeking a sales tax exemption for *all* publications and papers, irrespective of their content.  Should the Court grant such relief, Defendant argues, the resulting exemption would negatively impact the State's revenues, thus implicating the prohibitions of the Act.

The problem with Defendant's argument is that Plaintiffs seek no such relief.  They are not asking the Court to rewrite Georgia law to exempt from tax a vast body of literature–everything from the *Bhagavad Gita* to *Zen and the Art of Motorcycle Maintenance*.   Instead, Plaintiffs only ask that the Court restrain further application of O.C.G.A. §§ 48-8-3(15)(A) & (16).  (See generally V. Compl.)  Were it to enjoin the enforcement of such tax *exemptions*, this

9

Court would actually enrich the State of Georgia's coffers, not deplete them. It follows that the Tax Injunction Act's prohibitions are in no way implicated by this case. Hibbs v. Winn, 542 U.S. 88, 105-10, 124 S. Ct. 276, 159 L. Ed. 2d 172 (2004). The Act, accordingly, does not detract from Plaintiffs' likelihood of success.

Likewise, this Court does not find Defendant's standing argument persuasive. The standing inquiry focuses on "[w]hether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy . . . ." Sierra Club v. Morton, 405 U.S. 727, 731, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). Here, Plaintiffs are forced to endure a tax because the literature they seek to purchase and sell does not meet state-imposed religion and content requirements. A number of courts have concluded that persons so situated are entitled to seek judicial redress. See, e.g., Finlator, 902 F.2d at 1160-62 (4th Cir. 1990) (nonexempt book sellers and purchasers had standing to challenge exemption for Holy Bibles); Ahlburn, 728 A.2d at 450-52 (holding likewise *vis-a-vis* exemption for canonized scriptures). The Court finds the reasoning expressed in these decisions persuasive, and sees no reason do

depart from their holdings here.[5]

## B. Remaining Requirements for Preliminary Injunctive Relief

Plaintiffs have likewise succeeded in carrying their burden under the second, third, and forth prongs of the preliminary injunction inquiry. "The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury." See, e.g., Ingebretsen v. Jackson Pub. Sch. Dist., 88 F.3d 274, 280 (5th Cir. 1996); see also Dayton Area Visually Impaired Persons, Inc. v. Fisher, 70 F.3d 1474, 1490 (6th Cir. 1995) ("Consequently, to the extent that the plaintiffs have established a substantial likelihood that they could succeed on the merits of their First Amendment claims, they have also established the possibility of irreparable harm."). These harms, moreover, substantially outweigh those that will be "suffered" by Defendant and the State of Georgia if the injunction issues. Here, the State's revenues will ultimately *increase* as a consequence of an injunction barring the application of the

---

[5] It is of no consequence that Plaintiffs themselves will be forced to continue paying sales tax on their purchases, irrespective of this Court's resolution of the Motion. See Ragland, 481 U.S. at 227 (citing its "numerous decisions . . . in which [it] ha[s] considered claims that others similarly situated were exempt from the operation of a state law adversely affecting the claimant[,]" held that a contrary rule in this context "would effectively insulate underinclusive [tax] statutes from constitutional challenge . . .").

11

challenged tax exemptions. Finally, "[t]he protection of First Amendment rights and vindication of constitutional violations is always in the public's interest." ACLU v. Rutherford County, 209 F. Supp. 2d 799, 813 (M.D. Tenn. 2002).

For all the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction [2] is **GRANTED**.

## II.   Plaintiff's Motion for Consolidation

Plaintiffs have additionally moved, pursuant to Rule 65(a)(2), that the Court consolidate its resolution of their motion for preliminary injunction with trial of this action on its merits. See FED. R. CIV. P. 65(a)(2). The decision of whether to engage in such consolidation rests within the discretion of the trial court. See Abraham Zion Corp. v. Lebow, 761 F.2d 93, 101 (2d Cir. 1985).

In the instant case, Defendant, subject to certain qualifications that are no longer relevant following the dismissal of Plaintiffs' claims for damages, indicated that he did not object to consolidation. (See Resp. to Mot. for Prelim. Inj. [6] at 4.) Moreover, consolidation is a preferable result where, as here, the dispute at issue is essentially legal in character and the material facts are undisputed. Id.; see also Drummond v. Fulton County Dep't of Family &

Children Servs., 563 F.2d 1200, 1204 (5th Cir. 1977).  For these reasons, Plaintiffs' Rule 65(a)(2) Motion is, likewise, **GRANTED**.

### III.     Motion to Dismiss

Defendant's Motion to Dismiss rests entirely on the arguments he offered in opposition to Plaintiffs' Motion for Preliminary Injunction.  Because the Court finds those arguments lack merit, Defendant's Motion to Dismiss [7] is **DENIED**.

### Conclusion

Plaintiffs' Motion for a Preliminary Injunction and for Consolidation of the Preliminary Injunction and the Final Disposition [2] is **GRANTED**.  Defendant's Motion for Leave to File Response [5] is **GRANTED** *nunc pro tunc*.  Defendant's Motion to Dismiss [7] is **DENIED**.

The Court **DECLARES** that the sales tax exemptions codified at

O.C.G.A. §§ 48-8-3(15)(A) and (16) are unconstitutional.  Defendant is hereby **ENJOINED** from continuing to enforce those provisions of the Georgia Code.

    **SO ORDERED** this   6th   day of February, 2006.


                                                /s/ Richard W. Story
                                                RICHARD W. STORY
                                                UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)