**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| THOMAS BUDLONG, | : | |
| CANDACE APPLE, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:05-CV-2910-RWS |
| | : | |
| BART L. GRAHAM, in his | : | |
| individual and official capacity as | : | |
| Commissioner of the Georgia | : | |
| Department of Revenue, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

Plaintiffs brought this action challenging the constitutionality of two

provisions of the Georgia Sales and Use Tax Code, which exempt from taxation

certain religious books and papers.  In particular, Plaintiffs take issue with

subsections 15(A) and 16 of O.C.G.A. § 48-8-3, which provide that the

following items are exempt from Georgia's otherwise generally applicable sales

and use tax:

> (15)(A) . . . any religious paper in this state when the
> paper is owned and operated by religious institutions
> or denominations and no part of the net profit from
> the operation of the institution or denomination inures
> to the benefit of any private person;
>
> . . .
>
> (16) . . . Holy Bibles, testaments, and similar books
> commonly recognized as being Holy Scripture
> regardless of by or to whom sold.

O.C.G.A. §§ 48-8-3(15)(A) & (16).

The case comes before the Court on the parties' Joint Motion for Order on Consent Scheduling Order [26]; Plaintiff's Motion for Leave to File Excess Pages [35]; Plaintiffs' Motion for Summary Judgment [36]; and Defendant's Motion for Summary Judgment [37]. As an initial matter, the parties' Joint Motion for Order and Plaintiff's Motion for Leave to File Excess Pages are **GRANTED**, *nunc pro tunc*.

Because the Court concludes that the sales tax exemptions at issue discriminate on the basis of protected content without advancing a compelling state interest in violation of the First and Fourteenth Amendments, the Court grants Plaintiffs' Motion for Summary Judgment, declares O.C.G.A. § 48-8-

AO 72A
(Rev.8/82)

3(15)(A) and O.C.G.A. § 48-8-3(16) unconstitutional, and enjoins Defendant

from continuing to enforce these provisions of the Georgia Code.

## Background

Thomas Budlong, a retired librarian and the former President of the

Georgia Library Association, brought this action along with Candace Apple, a

proprietor of a retail bookstore in Atlanta, Georgia, pursuant to 42 U.S.C. §

1983.  Mr. Budlong complains that he has been forced to pay sales tax on books

and papers in the State of Georgia, including *Zen and the Art of Motorcycle*

*Maintenance* and the *Bhagavad Gita*.  Ms. Apple operates the Phoenix &

Dragon, a retail bookstore in Atlanta, Georgia that specializes in the sale of

metaphysical, religious, and spiritual books and periodicals which are subject to

Georgia's sales tax.  Mr. Budlong and Ms. Apple allege that Georgia's sales tax

exemptions for religious publications are impermissible under the Free Speech,

Free Press, Establishment, and Free Exercise Clauses of the First Amendment

to the United States Constitution, the Due Process Clause of the Fourteenth

Amendment, and various correlative provisions of the Constitution of the State

of Georgia.  They sue Defendant Bart L. Graham, the Commissioner of the

Georgia Department of Revenue, seeking solely injunctive relief.

3

By Order dated February 6, 2006, the Court enjoined Defendant from continuing to enforce the exemptions at issue.  Budlong v. Graham, 414 F. Supp. 2d 1222, 1226 (N.D. Ga. 2006).  (See Order of Feb. 6, 2006 [14] at 13-14.)   The Court concluded that Plaintiffs were substantially likely to prevail on their claim that the tax exemptions were unconstitutional under the Free Press Clause of the First Amendment because the exemptions discriminated on the basis of content in the absence of any asserted or demonstrated compelling state interest.  Budlong, 414 F. Supp. 2d at 1226.  In doing so, the Court rejected Defendant's argument that Plaintiffs were without standing to challenge the tax exemptions, and rejected Defendant's argument that the Court did not have jurisdiction to resolve the matter under the Tax Injunction Act, 28 U.S.C. § 1341.  Id. at 1226-27.  Finally, the Court granted Plaintiff's request to consolidate the preliminary injunction and the final disposition, and issued a permanent injunction against further enforcement of the tax exemptions at issue.  Id. at 1228.

Several months later, however, on Defendant's timely motion, the Court vacated the portion of its February 6, 2006 Order consolidating the preliminary injunction with the final disposition.  (See Order of Jul. 13, 2006 [24] at 14.)

4

The Court noted that it was "sensitive to Defendant's allegation that he did not in fact consent to consolidation without an evidentiary hearing, and that, absent such consent, he was not given sufficient notice of the Court's intention to so proceed." (Id. at 13.)  Although it agreed to reconsider its grant of a permanent injunction, the Court declined to reconsider its conclusions concerning standing and jurisdiction under the Tax Injunction Act.  (Id. at 14-17.)

Since the entry of the Court's Order of July 13, 2006, both parties have moved for summary judgment.  Plaintiffs seek a final declaration of unconstitutionality and a permanent injunction against the enforcement of O.C.G.A. § 48-8-3(15)(A) and O.C.G.A. § 48-8-3(16).  (See Pls.' Mot. for Summ. J. [36].)  Defendant seeks dismissal of the action.  (See Def.'s Mot. for Summ. J. [37].)  The Court now takes up these motions.

## Discussion

### I.    Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The court should view the evidence and any inferences that

5

may be drawn from it in the light most favorable to the non-movant.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## II.    The Parties' Motions for Summary Judgment

In the last two decades, five reported cases, including one handed down by the Supreme Court, have considered the constitutionality of laws exempting religious materials from a state's general sales tax.  <u>See</u> <u>Texas Monthly, Inc. v. Bullock</u>, 489 U.S. 1, 109 S. Ct. 890, 103 L. Ed. 2d 1 (1989) (Texas); <u>Finlator v. Powers</u>, 902 F.2d 1158, 1162-63 (4th Cir. 1990) (North Carolina); <u>Ahlburn v. Clark</u>, 728 A.2d 449, 450 (R.I. 1999) (Rhode Island); <u>Haller v. Commonwealth of Pennsylvania</u>, 728 A.2d 351, 355 (Pa. 1999) (Pennsylvania); <u>Thayer v. South Carolina Tax Comm'n</u>, 413 S.E.2d 810 (S.C. 1992) (South Carolina).  All have

6

struck down the challenged exemptions as violative of the First Amendment.

Like the statutes at issue in those cases, Georgia's tax exemptions express a

governmental preference for certain religious materials over others, and elevate

religion over other subject matters.  Because the exemptions are not narrowly

tailored to advance a compelling state interest, the exemptions violate the Free

Press Clause of the First Amendment.

The First Amendment, as incorporated against the states by the

Fourteenth Amendment, forbids state laws "abridging the freedom of speech, or

of the press[.]"  U.S. CONST. amend. I.  Under the Free Press Clause,

"[r]egulations which permit the Government to discriminate on the basis of the

content of the message cannot be tolerated" absent a showing that the

regulations further a compelling governmental interest and are narrowly tailored

to achieve that interest.  Regan v. Time, Inc., 468 U.S. 641, 648-49, 104 S. Ct.

3262, 82 L. Ed. 2d 487 (1984).

More than twenty years ago, the Supreme Court relied on this principle in

striking down an Arkansas law exempting religious, professional, trade, and

sports journals, but not general interest magazines, from the state's sales and

use tax.  See Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.

Ct. 1722, 95 L. Ed. 2d 209 (1987).  The exemptions, the Supreme Court

observed, made a publication's "tax status depend[ent] on its *content*," and thus

discriminated on the basis of content.  Id. at 229 (emphasis in original).  It

reasoned:

> In order to determine whether a [publication] is
> subject to sales tax, [the State's] 'enforcement
> authorities must necessarily examine the content of
> the message that is conveyed . . . .' [Cit.]  Such
> official scrutiny of the content of publications as the
> basis for imposing a tax is entirely incompatible with
> the First Amendment's guarantee of freedom of the
> press.

Id. at 230.  Because it was not narrowly tailored to advance the interests

advanced by the state, including fostering communication and assisting

"fledgling publishers," the Court concluded it violated the Free Press Clause.

Id. at 232-34.

Two years later, the Supreme Court considered a challenge to another

sales tax exemption, but one which was restricted, like the exemptions at issue

in this case, to certain religious publications.  Texas Monthly, Inc. v. Bullock,

489 U.S. at 1.  This time, a majority of the Court invoked a separate source of

constitutional authority—the Establishment Clause—to strike down the

8

exemptions at issue.  Id. at 5.  There, the plaintiffs brought a First Amendment

challenge to a Texas statute which exempted "[p]eriodicals that are published or

distributed by a religious faith and that consist wholly of writings promulgating

the teaching of the faith and books that consist wholly of writings sacred to a

religious faith" from the state's sales and use tax.  489 U.S. at 6.  Five members

of the Supreme Court agreed that the exemption violated the Establishment

Clause of the First Amendment because it sponsored religious expression

through indirect state subsidization.  Id. at 5 (three-justice plurality opinion); id.

at 26-29 (Blackmun, J. concurring in the judgment, joined by O'Connor, J.)

(agreeing that exemption violated Establishment Clause because books

advancing atheism were not also exempted).  Although the majority of justices

declined to consider whether it also violated the Free Press Clause, id. at 17 n.7,

Justice White, relying on the Court's decision two years earlier in Ragland,

wrote separately that it was unnecessary to reach the Establishment Clause issue

since the statute clearly violated the Free Press Clause.  Id. at 25-26 (White, J.,

concurring in the judgment).

　　　　　Following the Supreme Court's decisions in Ragland and Bullock,

several lower courts have considered the constitutionality of state tax

exemptions limited to religious materials, and provided reasoning instructive to the Court's considerations here.  Relying on <u>Bullock</u>, the highest courts of South Carolina and Pennsylvania have invoked the Establishment Clause to strike down tax exemptions for religious materials from their states' sales and use tax.  <u>See</u> <u>Thayer</u>, 413 S.E.2d at 814-14 (concluding that exemption for "religious publications, including the Holy Bible . . . devoted to man's relationship to Divinity; to reference, worship, obedience . . . [and with] substantial reference to belief in the existence of superior beings" violated Establishment Clause); <u>Haller</u>, 728 A.2d at 351, 355-56 (concluding that exemption for "religious publications sold by religious groups and Bibles and religious articles" violated Establishment Clause).

But in <u>Ahlburn v. Clark</u>, the Rhode Island Supreme Court instead invoked the Free Press Clause, as did the Supreme Court in <u>Ragland</u> and Justice White in <u>Bullock</u>, to strike down Rhode Island's exemption of "any canonized scriptures of any tax exempt non-profit religious organization including but not limited to the Old Testament and the New Testament versions" from its state sales tax.  728 A.2d at 450.  Since it was apparent from the face of the statute that it was content-discriminatory, the Court first considered whether the statute

10

passed muster under the Free Press Clause.  Reasoning that, "by confining these

particular tax exemptions exclusively to the sale of canonized scriptures and

other favored types of publications—but not others—the General Assembly

obviously has engaged in a preferential effort to foster the communication of

certain privileged publications in a manner that is anything but content neutral,"

the Court concluded that it discriminated on the basis of content.  Id. at 454.

The Court then turned to apply strict scrutiny, concluding that the exemptions

violated the Free Press Clause because Rhode Island's proferred compelling

interest in the "advancement of the well-being of Rhode Island's citizenry" was

"markedly under-inclusive to accomplish such a broad-based objective."  Since

it was unconstitutional under the Free Press Clause, the Court found it

unnecessary to conduct the more complex inquiry into whether the exemptions

also violated the Establishment Clause.  Id. at 452 & n.2.

　　　　Georgia's sale tax exemptions, which exempt "any religious paper . . .

owned and operated by religious institutions" and "books commonly recognized

as being Holy Scripture," O.C.G.A. §§ 48-8-3(15)(A) & (16), closely parallel

the exemptions for "periodicals . . . published by a religious faith" and "writings

sacred to a religious faith" the Supreme Court found violated the Establishment

Clause in <u>Bullock</u>.  Nevertheless, in this case, like in <u>Ahlburn</u>, it is readily apparent from the face of the Georgia statutes that the exemptions discriminate on the basis of content.  Thus, the Court first examines whether O.C.G.A. §§ 48-8-3(15)(A) & (16) pass muster under the Free Press Clause.  <u>See</u> <u>Ahlburn</u>, 728 S.2d at 450.

Georgia's sales tax exemptions discriminate on the basis of content because the application of Georgia's sales tax to an individual publication depends on the publication's content.  For subsection 15(a) to exempt a publication from taxation, it must not only be "owned and operated by a religious institution," but it must be "religious."[1]  O.C.G.A. § 48-8-3(15)(A).  It thus discriminates between religious and non-religious writings.  Similarly, for subsection 16 to apply, a publication must be a "sacred" writing which is "commonly recognized as Holy Scripture."  O.C.G.A. § 48-8-3(16).  It thus discriminates between sacred writings and non-sacred writings, and disfavors

---

[1]  A publication *sold by* a religious institution, however, may be exempt from taxation under O.C.G.A. § 48-8-3(15)(B) (exempting all retail sales "[b]y religious institutions" as long as certain factors are met).  Unlike that statute, which Plaintiffs do not challenge in this litigation, O.C.G.A. § 48-8-3(15)(A) purports to exempt from taxation not only sales by religious institutions of religious publications owned and operated by religious institutions (which may also be exempt under subsection (15)(B)), but also sales of such materials by private booksellers.

12

writings which might be considered sacred to some but are not "commonly recognized" as such.  In doing so, both exemptions express a governmental preference for organized religious expression over spiritual, philosophical, agnostic, atheistic, and other forms of self expression.

Defendant argues that the sales tax exemptions at issue here "apply not based on an item's content but based on its status as a 'holy scripture' or as a religious paper owned and operated by a § 501(c)(3) [tax-exempt] religious organization or denomination."  (See Def.'s Resp. to Pls.' Mot. for Summ. J. [41] at 3.)  By conflating the two exemptions, Defendant ignores the content-based requirements of each.  The state must inevitably determine what qualifies as having the status of "Holy Scripture" or what qualifies as a "religious paper" owned and operated by a religious institution.   For example, under subsection 15(a) a cookbook or calendar published by a religious institution would presumably not qualify for the exemption because it is not a "religious paper." But a monthly prayer magazine presumably would qualify.  And under subsection 16, books containing commentaries on or critiques of the Bible may or may not be exempted, depending on whether the state concludes such books are "commonly recognized" as "Holy Scripture."  It is the drawing of these

13

lines—between religious and a non-religious papers and between sacred and non-sacred publications—that require "precisely th[e] type of 'official scrutiny of the content of publications as the basis for imposing a tax' that is so repugnant to the free press clause of the Constitution."[2] <u>Finlator</u>, 902 F.2d at 1163 (quoting <u>Ragland</u>, 481 U.S. at 230)).

Having concluded that the challenged tax exemptions discriminate on the basis of content, the Court turns to examine whether the state has demonstrated that the exceptions advance a compelling state interest and are narrowly tailored. Defendant states that a sales tax exemption for religious materials advances the compelling state interest in "limiting governmental interference with the exercise of religion," and that the exemptions are narrowly tailored to achieve that goal "because they are limited to the 'holy scriptures' and papers of any denomination or faith, thereby permitting unfettered public access to the key texts of a faith and their papers while eliminating state involvement in the

---

[2] It is also for this reason that Defendant's argument that the exemptions "alleviate[] the need for official scrutiny because the exemption provides only that the text must be 'commonly recognized' as 'holy scripture'" also fails. (Def.'s Resp. to Pls.' Mot. for Summ. J. [41] at 4.) A state may not avoid content discrimination by endorsing the favored content of private individuals and labeling that endorsement a content-neutral recognition of "status" or popularity.

determination of what materials qualify."  (See Def.'s Mot. for Summ. J. [37-2] at 26.)

As an initial matter, it is not clear that Defendants have asserted a compelling state interest in the first instance.  A unanimous Supreme Court has held that imposing a generally applicable sales tax on religious publications does not substantially burden religious practice and thus is constitutional under the First Amendment.  Jimmy Swaggart Ministries v. Bd. of Equalization of Cal., 493 U.S. 378, 110 S. Ct. 688, 107 L. Ed. 2d 796 (1990) (stating that "to the extent that imposition of a generally applicable tax merely decreases the amount of money appellant has to spend on its religious activities, any such burden is not constitutionally significant").  Defendant thus asserts an interest in accommodating religious expression in a manner which is not constitutionally mandated, or, stated differently, in limiting constitutionally *insignificant* governmental interference with religious expression.  Yet Defendant does not cite a single case recognizing such an interest as *compelling*, and the relevant authorities indicate that eliminating a sales tax exemption on religious publications does not advance a compelling state interest.  See Texas Monthly, Inc., 489 U.S. at 18 n.8 (noting that exemption for religious materials "does not

AO 72A
(Rev.8/82)

remove a demonstrated and possibly grave imposition on religious activity sheltered by the Free Exercise Clause"); <u>Haller</u>, 728 A.2d at 355 (citing <u>Texas Monthly</u> and reasoning that "sales tax exemptions are not needed to lift a significant restraint on religious activity," but rather such exemptions instead "impose a 'substantial burden' upon nonbeneficiaries by increasing their tax burden"); <u>cf.</u> <u>Bob Jones Univ. v. United States</u>, 461 U.S. 574, 604, 103 S. Ct. 2017, 76 L. Ed. 2d 157 (1983) (noting that compelling interest in eradicating race discrimination in schools "substantially outweighs whatever burden denial of tax benefits places on petitioner's exercise of their religious beliefs").

Even assuming Defendant has asserted a compelling state interest, however, the sales tax exemptions at issue here are not narrowly tailored. The exemptions apply only to materials published by religious organizations and "sacred" texts common to organized religions. If the purpose of the exemptions is to alleviate monetary burdens imposed on religious practice, the exemptions are significantly under-inclusive, failing to include the much broader range of religiously motivated retail activities currently subject to the tax. Indeed, a significant number of religious publications, including those not "commonly recognized" as "sacred" and those not published by a religious institution, are

16

not exempt under the provisions.  The exemptions thus fail the scrutiny imposed by the Free Press Clause.  See Ahlburn, 728 A.2d at 454 (noting that to advance asserted compelling state interest in well-being of citizenry, sales tax exemptions "would have to include, at a minimum, a much broader spectrum of published material, including books, magazines, non-canonized religious publications, and writings that question or criticize the teachings of the established religious faiths that do not happen to be included in a newspaper or a textbook").

In sum, the Court concludes that O.C.G.A. § 48-8-3(15)(A) and O.C.G.A. § 48-8-3(16) are unconstitutional under the Free Press Clause of the First Amendment.  In view of its conclusion, the Court declines to reach the other challenges brought by Plaintiffs under the Establishment Clause, the Due Process Clause, and the Georgia Constitution.

**Conclusion**

For the foregoing reasons, the parties' Joint Motion for Order on Consent Scheduling Order [26] is **GRANTED *nunc pro tunc***.  Plaintiff's Motion for Leave to File Excess Pages [35] is **GRANTED *nunc pro tunc.***  Plaintiffs'

AO 72A
(Rev.8/82)

Motion for Summary Judgment [36] is **GRANTED**.  Defendant's Motion for Summary Judgment [37] is **DENIED**.

The Court **DECLARES** that the sales tax exemptions codified at O.C.G.A. § 48-8-3(15)(A) and O.C.G.A. § 48-8-3(16) are unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Defendant is hereby **ENJOINED** from continuing to enforce those provisions of the Georgia Code.

**SO ORDERED** this  16th  day of May, 2007.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

18

AO 72A
(Rev.8/82)